Submitted June 4, 2021, affirmed May 18, 2022

### JEFFREY TAYLOR,
*Petitioner,*

*v.*

### OREGON STATE HOSPITAL,
*Respondent.*

Oregon State Hospital
88001; A173473

510 P3d 244

Petitioner seeks judicial review of the administrative law judge's (ALJ) final order affirming Oregon State Hospital's (State Hospital's) decision to administer psychotropic medications to petitioner without his consent and denying rehearing. He argues that State Hospital failed to follow the administrative rules governing informed consent and the administration of "significant procedures" in the absence of informed consent. *Held*: There is substantial evidence that supports the ALJ's factual findings that State Hospital followed administrative rules in its determination that petitioner did not have capacity to give informed consent and its finding of good cause to administer psychotropic medication without informed consent. The ALJ did not err in affirming State Hospital's determination and denying rehearing.

Affirmed.

Jeffrey Taylor filed the brief *pro se*.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Mooney, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.

MOONEY, P. J.

Affirmed.

**MOONEY, P. J.**

Petitioner is a patient residing at the Oregon State Hospital ("State Hospital"). State Hospital notified petitioner of its conclusion that it had good cause to administer certain "significant procedures" (psychotropic medications) to petitioner without his informed consent. Petitioner requested a hearing, and he now seeks judicial review of the resulting final order that affirmed State Hospital's decision to administer psychotropic medications to petitioner without his consent and the final order denying rehearing and reconsideration, both of which were issued by the assigned aministrative law judge (ALJ) from the Office of Administrative Hearings for the Oregon State Hospital. Petitioner assigns error to the ALJ's final orders arguing that State Hospital failed to follow the administrative rules concerning informed consent and the administration of "significant procedures" in the absence of informed consent. We conclude that State Hospital followed the applicable procedures set forth in OAR 309-114-0010 and OAR 309-114-0020 and, therefore, we affirm.

We review the ALJ's decision for substantial evidence and legal error. ORS 183.482(8). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

Petitioner has been diagnosed with schizophrenia and he experiences auditory and visual hallucinations, delusions, and paranoia as symptoms of that diagnosis. Petitioner has received extensive inpatient and outpatient treatment for his schizophrenia. Treatment with psychotropic medications has been of benefit to him in the past; however, petitioner has also experienced restlessness as a side effect of those medications. It was during a time when petitioner stopped taking those medications because of the side effects that his delusions returned, and he killed his roommate's dog as a result. Petitioner was found guilty except for insanity of one count of first-degree aggravated animal abuse and two counts of first-degree animal abuse. He was then admitted to the State Hospital under the jurisdiction of the Psychiatric Security Review Board.

Once admitted to the State Hospital, it was determined that petitioner required several medications. Petitioner did not consent to take those medications. Because the administration of psychotropic medication qualifies as a significant procedure, the State Hospital issued petitioner a "Notice of Involuntary Administration of Significant Procedures (medications) with Good Cause." After a hearing requested by petitioner, the presiding ALJ issued a final order authorizing State Hospital to administer psychotropic medication without petitioner's consent. As already mentioned, petitioner's request for reconsideration was denied, and this petition for review followed.

A patient is presumed competent to consent to or withhold consent from significant procedures, which includes the administration of psychotropic medication. OAR 309-114-0010(2)(a); OAR 309-114-0005(16). Nevertheless, a state institution may medicate a patient without the patient's informed consent for good cause. OAR 309-114-0010(1)(b)(C). Several factors must be satisfied and present for good cause to exist and they are described in OAR 309-114-0020(1).[1] The sole issue raised by petitioner concerns the first factor— whether petitioner was properly "deemed unable to consent" to psychotropic medication. OAR 309-114-0020(1)(a).

A person committed to State Hospital may be deemed unable to consent to significant procedures "only if the person currently demonstrates an inability to reasonably comprehend and weigh the risks and benefits of the proposed procedure *** or no treatment at all." OAR 309-114-0010(2)(a). Inability to provide informed consent must

---

[1] OAR 309-114-0020(1) provides, in part:

"Good cause: Good cause exists to administer a significant procedure to a person committed to the Division without informed consent if in the opinion of the treating physician or psychiatric nurse practitioner after consultation with the treatment team, the following factors are satisfied:

"(a) Pursuant to OAR 309-114-0010(2), the person is deemed unable to consent to, refuse, withhold or withdraw consent to the significant procedure. This determination must be documented on the treating physician's or psychiatric nurse practitioner's informed consent form and the independent examining physician's evaluation form. It must include the specific questions asked and answers given regarding the patient's ability to weigh the risks and benefits of the proposed treatment, alternative treatment and no treatment including, but not limited to all relevant factors listed in 309-114-0010(3)(a)."

be "documented in the patient's record and supported by the patient's statements or behavior[.]" OAR 309-114-0010(2)(a). Here, the ALJ found that, although petitioner had "shown some understanding of the risks of the proposed medications," he had "not shown an understanding of the benefits of the proposed medications other than the medications that treat anxiety." The ALJ found that petitioner lacks "insight into the nature and seriousness of his mental illness" and that he did not understand that "his hallucinations are a symptom of schizophrenia." Petitioner's psychiatric nurse practitioner and the consulting physician both determined that petitioner was unable to rationally weigh the risks and benefits of the medication because of his delusions. Substantial evidence in the record supports that finding.

Petitioner focuses on the requirement that a person from whom informed consent to significant procedures is sought must "be given information, orally and in writing, the substance of which is to be found on the treating [provider's] informed consent form." OAR 309-114-0010(3). Particularly for medication, a person must be provided a "preprinted information sheet on the risks and benefits of the medication" to be administered. OAR 309-114-0010(3). The treating physician or psychiatric nurse practitioner must document in the patient's chart that the information required by OAR 309-114-0010(3) was explained to the patient and that the patient either consented or refused the procedure. OAR 309-114-0010(3)(b). Petitioner argues that he should have been given the preprinted information sheet earlier in the process than he was, and that he was thereby deprived of the information that he needed to properly weigh the risks and benefits of the proposed medications. But petitioner's focus on the timing of when he was given the written information sheet ignores the evidence that his providers had discussed the risks and benefits of the medications with him on several occasions and that, in their opinions, he was not able to rationally weigh those risks and benefits because of his psychiatric illness.

The existence of good cause to administer a significant procedure in the absence of informed consent does not depend on whether or when the patient received written

information about the risks and benefits of the proposed procedure. What matters is that

> "[t]he institution made a conscientious effort to obtain informed consent from the patient. *** A 'conscientious effort' to obtain informed consent means the patient's treating physician or psychiatric nurse practitioner made at least two good faith attempts to obtain informed consent by attempting to explain the procedure to the patient and documenting those efforts in the patient's record."

OAR 309-114-0020(1)(d). The psychiatric nurse practitioner documented her efforts to obtain petitioner's informed consent, and both she and the consulting physician documented their conclusions that petitioner lacked the capacity to reasonably comprehend and weigh the risks and benefits of the medication and, ultimately, the capacity to consent—or withhold consent—to the proposed medications. Only after that process did the Chief Medical Officer review the records and conclude that petitioner was unable to give informed consent and that there was good cause to administer the medications despite that inability.

In sum, we conclude that substantial evidence supports the ALJ's factual findings, and the ALJ did not legally err in determining that State Hospital followed the required statutory procedures in determining petitioner's capacity to give informed consent and the existence of good cause to administer the medications despite the lack of informed consent. It follows that the ALJ did not err in affirming State Hospital's determination that the psychotropic medications should be administered without petitioner's consent.

Affirmed.